

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **TERRI MCGUIRE MOLLICA,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:17-cv-08033-VEH** |
| | ) | **(2:15-cr-162-VEH-TMP)** |
| **UNITED STATES OF AMERICA,** | ) | **(2:15-cr-224-VEH-TMP)** |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

---

## MEMORANDUM OPINION

## I.   Procedural History

On July 5, 2017, Terri McGuire Mollica ("Petitioner") filed a motion

pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed

upon her in *United States v. Mollica*, 2:15-cr-224-VEH-TMP (N.D. Ala. 2015)

(doc. 1) (the "Section 2255 Motion"). Sentence was imposed on October 15, 2015,

after Petitioner pleaded guilty to the crime of Unlawful Use of a Communication

Facility, in violation of 21 U.S.C. § 843(b). This Court sentenced Petitioner to a

total of 28 months imprisonment, of which 14 months was to run concurrently

with the sentence to be imposed in *United States v. Mollica*,

2:14-cr-329-KOB-HGD (N.D. Ala. 2016), and 14 months—imposed based on the

sentencing enhancement found at 18 U.S.C. § 3147—was imposed to run

consecutively to any other term of imprisonment.

Petitioner appealed her sentence. The Court of Appeals summarized

Petitioner's direct appeal issues as follows:

> Terri McGuire Mollica appeals her 28-month total sentence of imprisonment, imposed after she pleaded guilty to one count of unlawful use of a communication facility to commit a felony, in violation of 21 U.S.C. § 843(b), and received a statutory enhancement pursuant to 18 U.S.C. § 3147 for committing that offense while on bond. She argues that her total sentence was substantively unreasonable because the district court improperly implemented the division of sentences required by 18 U.S.C. § 3147 and U.S.S.G. § 3Cl.3. She also argues that her total sentence, which included a 100% upward variance, was substantively unreasonable.

*United States v. Mollica*, 655 F. App'x 726, 727 (11th Cir. 2016).

On July 29, 2016, Petitioner's sentence was affirmed by the Eleventh

Circuit Court of Appeals. That Court rejected Petitioner's first appeal issue,

holding that "[t]he district court did not abuse its discretion when it imposed a

substantial sentencing enhancement pursuant to 18 U.S.C. § 3147: a large

enhancement was justified based on the § 3553(a) sentencing factors." *Id*. at 728-

29. The Court of Appeals also rejected Petitioner's second (and last) issue, holding

that "[t]he total sentence . . . is substantively reasonable." *Id*. at 729. In reaching

its conclusion on the second issue, the Court stated:

The district court properly considered the section 3553(a) factors when imposing a substantial upward variance. The victims of the instant offense were a co-conspirator and the spouse of a prosecutor that were involved in Mollica's fraud and money laundering conviction. The district court noted the nature and circumstances of the offense indicated that the offense was conducted in a calculating and sophisticated way, in an attempt either to intimidate or to retaliate against a co-conspirator and a prosecutor trying her case. The district court also noted a need to uphold the law and adequately to deter criminal conduct of an intimidating or vindictive nature. The nature of the offense and the need to uphold the law and integrity of judicial proceedings both point in the direction of a large enhancement. Furthermore, the resulting sentence was 28 months, which is substantially below the statutory maximum of 48 months.

*Id*.

The Government filed its Answer and Response in Opposition (doc. 9) on November 14, 2017. Petitioner filed her Reply (doc. 13) on December 11, 2017. She filed a "Supplemental Addendum" (doc. 14) on February 13, 2018. Accordingly, the Section 225 Motion is ripe for review.

## II.    **Threshold Issue: Timeliness**

The Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996, and, pertinent to this analysis, added a new subdivision to 28 U.S.C. § 2255 providing for a one-year period of limitations within which federal prisoners must file their motions to vacate pursuant to 28 U.S.C. § 2255. *Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000), *cert.*

*denied*, 531 U.S. 971, 121 S. Ct. 410, 148 L. Ed. 2d 316 (2000). A one-year period

of limitation applies to a motion under section 2255. The limitation period runs

from the latest of:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The Eleventh Circuit affirmed Petitioner's conviction and sentence on July

29, 2016. Since Petitioner did not file a petition for writ of certiorari in the

Supreme Court (*see* Docket Sheet), her conviction became final ninety (90) days

later, on October 27, 2016, that is, the date on which the time for filing a petition

for certiorari expired. *Clay v. United States*, 537 U.S. 522, 524-25, 532, 123 S. Ct.

1072, 1075, 1079, 155 L. Ed. 2d 88 (2003).

On June 29, 2017, Petitioner signed her Section 2255 Motion under oath.

4

(Doc. 1 at 12, 18). Applying the "prison mailbox rule," the Court deems the Section 2255 Motion to have been filed that day. *See Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam) (holding that a prisoner's section 2255 motion is deemed to have been filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it" (citing *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001))). Accordingly, the Section 2255 Motion is timely.[1]

## III.  General Legal Principles

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. A prisoner is entitled to relief only if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011) (quoting 28 U.S.C. § 2255(a)). "[R]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v.*

---

[1] The government does not challenge the timeliness of the Section 2255 Motion.

*United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)). The "fundamental miscarriage of justice" exception is met if a petitioner shows that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). "[O]nce a matter has been decided adversely to a defendant on direct appeal[,] it cannot be re-litigated in a collateral attack under section 2255." *Nyhuis*, 211 F.3d at 1343 (first alteration in original) (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16, 83 S. Ct. 1068, 1077, 10 L. Ed. 2d 148 (1963) (stating that "identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects"). Additionally, an issue that was available to be raised on direct appeal,

but that was not, is also procedurally barred. *McKay*, 657 F.3d at 1196 ("Under the procedural default rule, 'a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.'" (citing *Lynn*, 365 F.3d at 1234)).

Petitioner asserts several challenges to her counsel's effectiveness during various stages of the proceeding. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ." *Burt v. Titlow*, 571 U.S. 12, 24, 134 S. Ct. 10, 18, 187 L. Ed. 2d 348 (2013) (citing *Mickens v. Taylor*, 535 U.S. 162, 171, 122 S. Ct. 1237, 1243, 152 L. Ed. 2d 291 (2002)). To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate (1) that her counsel's performance was deficient, i.e., the performance fell below an objective standard

of reasonableness, and (2) that she suffered prejudice as a result of that deficient performance. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

A court need not address both prongs of *Strickland* if the movant makes an insufficient showing on one of the prongs. *Id.* at 697; *see also Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Butcher v. United States*, 368 F.3d 1290, 1293 (11 Cir. 2004). Further, counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).

Regarding the prejudice component, the Supreme Court has explained that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

The two-pronged Strickland test is also applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 369-70, 88 L. Ed. 2d 203 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Id.* at 58. The second prong of the *Strickland* test "focuses on whether counsel's constitutionally ineffective

performance affected the outcome of the plea process." *Id*. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. (footnote omitted).

## IV. __Issues Presented__

The Petitioner asserts seventeen grounds. (*See* doc. 1). As explained below, each and every ground fails.

### 1. __Ground #1: Violation of Due Process Related to Upward Sentencing Departure__

This ground fails because the Court did not "depart" upward; it varied upward. Further, this issue was "available" at the time of Petitioner's direct appeal, and thus could have been raised on direct appeal, but was not.[2] Accordingly, review of this issue before this Court is procedurally barred. *McKay*, 657 F.3d at 1196 ("Under the procedural default rule, 'a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else

---

[2] The issue of this Court's variance *was* raised on direct appeal and was rejected. Accordingly, assuming that Petitioner seeks to challenge the variance in this proceeding, that challenge is procedurally barred. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that we rejected in his direct appeal.").

the defendant is barred from presenting that claim in a § 2255 proceeding.'"

(citing *Lynn*, 365 F.3d at 1234)).

Although there are exceptions to procedural default, no exception is applicable to this ground, nor has Petitioner asserted that any apply. Specifically, Petitioner has failed to allege, much less show, that "cause and prejudice" or a "miscarriage of justice" (i.e., actual innocence) excuses her failure. *See id.*

This claim fails.

## 2. Ground #2: Violation of 6th Amendment Right to Effective Assistance of Counsel Related to Ground #1

Petitioner also asserts that her counsel's failure to raise this due process claim on appeal was ineffective assistance.[3] This argument fails for at least four reasons. First, this Court did not "depart"; it varied. Second, if Petitioner is challenging the Court's variance, Petitioner's counsel raised that issue on appeal. Third, the Eleventh Circuit affirmed this Court's variance and the sentence. Finally, any argument that the Court's sentence violated Petitioner's due process rights fails, and thus it was not ineffective assistance to fail to assert it. *Nyhuis*, 211 F.3d at 1344 ("Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" (quoting *Alvord v. Wainwright*, 725,

---

[3] The Court notes that Petitioner was represented on appeal by a different attorney than counsel who represented her at the plea and sentencing hearings.

F.2d 1282, 1291 (11th Cir. 1984))).

This claim fails.

### 3. Ground #3: Violation of 5th Amendment Right to Due Process and Protection from Self-Incrimination

This ground is asserted based on a non-custodial interview of Petitioner in her home on May 11, 2015. Petitioner asserts that this interview was surreptitiously recorded. This ground is procedurally defaulted, as it could have been, but was not, raised on direct appeal. Petitioner's reason for not raising this issue on direct appeal is that the "U.S. Attorney's office agreed to drop related charges as a result of a Plea Agreement." (Doc. 1 at 7). This asserted reason does not fall within any of the exceptions to the procedural default rule.

Additionally, in the plea agreement, Petitioner waived her right to collaterally attack her conviction. The Fifth Amendment claim asserted here has nothing to do with the Court's variance to an above-guideline sentence (which was an appeal right reserved in the plea agreement). Rather, it is a challenge to the conviction itself. Accordingly, the waiver in the plea agreement bars this claim.

Further, this ground also fails because it is barred by her plea of guilty. "A defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all *nonjurisdictional* defects in that defendant's court

proceedings." *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir.1984). Once a defendant enters a knowing, voluntary guilty plea, "[s]he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973). Here, the guilty plea was entered knowingly and voluntarily, as shown by the written plea agreement and the plea colloquy between the undersigned and Petitioner.

This claim fails.

4.    **Ground #4: Violation of 6th Amendment Right of Effective Counsel by Unlawfully Interfering with the Attorney-Client Relationship**

Here, Petitioner asserts that Postal Inspectors and Assistant United States Attorneys tricked her attorney into allowing the interview without his presence. She says that this "trickery" constituted entrapment and resulted in her arrest on May 12, 2015, for obstruction of justice. She concludes that this trickery therefore rose to the level of interfering with her Sixth Amendment right to counsel.

This ground is based on the same non-custodial interview that is the subject of Ground #3. As with Ground #3, Petitioner's reason for not raising this issue on direct appeal is that the "U.S. Attorney's office agreed to drop related charges as a result of a Plea Agreement." (Doc. 1 at 8). For all the same reasons that Ground #3

fails, so too does Ground #4.

This claim fails.

**5.    Ground #5: Violation of 4th Amendment Unlawful Search and Seizure**

This ground generally asserts that Petitioner's rights under the Fourth Amendment were violated when her purse was seized and searched after her arrest. The same analysis applied to Grounds #3 and #4 applies here. This ground is procedurally defaulted because it was not asserted on direct appeal. It also is a collateral attack on Petitioner's conviction, barred by the waiver in the plea agreement. Finally, it is barred by Petitioner's guilty plea.

This claim fails.

**6.    Ground #6: Violation of 4th Amendment - Unlawful Seizure of Property and Violation of Possessory Interest**

This claim also fails, for the same reasons that Grounds #3, #4, and #5 fail.

**7.    Ground #7: Violation of 6th Amendment Right to Effective Assistance of Counsel for Grounds #5 and #6**

Petitioner asserts that her counsel was constitutionally ineffective because he did not move to suppress items found in her purse that she says were the "sole basis" for the charge for which she was convicted and sentenced. (*Id.* at 14). However, because Petitioner never claims that she would not have pleaded guilty

13

if counsel had moved to suppress those items, she has not even alleged, must less shown, prejudice.

This claim fails.

### 8. Ground #8: Violation of 6th Amendment Right to Effective Assistance of Counsel - Attorney's Inappropriate Comments

In this section, Petitioner asserts that an "inappropriate" conversation occurred between her attorney and Postal Inspectors on May 12, 2015. (*Id.*) However, Petitioner does not claim that she did not know about this conversation before entering her plea of guilty, yet she did not raise it on direct appeal. Further, Petitioner has not explained how this inappropriate conversation with one attorney who represented her in one criminal action (not the same attorney, by the way, as the one who represented her in the criminal action collaterally attacked in this proceeding) amounted to a constitutional violation of her right to counsel in the criminal action collaterally attacked in this proceeding. She also never claims that she would not have pleaded guilty if the conversation had not occurred; thus, she has not even alleged prejudice.

This claim fails.

### 9. Ground #9: Involuntary Plea Agreement

Petitioner argues that her mental status at time she "entered into the plea

agreement" caused her plea of guilty to be involuntary. (*Id.*) However, this argument is directly refuted by the extensive plea colloquy between Petitioner and the undersigned.

This claim fails.

**10. Ground #10: Involuntary Plea Agreement**

Here, Petitioner asserts that Assistant United States Attorneys threatened "to prosecute [Petitioner's] mentally ill sister and [] husband for 'food stamp fraud' if [Petitioner] did not accept [the plea agreement] immediately." (*Id.*; doc. 13 at 8). However, in her plea colloquy with the undersigned, Petitioner affirmed that the only promises that had been made to encourage her to enter her plea of guilty were those set out in the plea agreement. She further affirmed that "no one" had threatened her to encourage her to enter her plea of guilty.

Courts "strongly presume that the defendant's statements at the guilty-plea colloquy were truthful, including his admission of guilt and his representation that he understood the consequences of his plea." *United States v. Baxley*, 402 F. App'x 461, 462 (11th Cir. 2010) (per curiam) (unpublished) (citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.1994)) (recognizing this strong presumption in the context of direct appeal); *accord Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977) ("Solemn declarations in open court

carry a strong presumption of verity."); *United States v. Gonzalez–Mercado*, 808 F.2d 796, 800 n.8 (11th Cir.1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true." (citing *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 & n.14 (11th Cir. 1985))). A defendant who makes statements under oath at a plea colloquy "bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988) (per curiam) (citing *United States v. Hauring*, 790 F.2d 1570, 1571 (11th Cir. 1986)).

Here, Petitioner's allegations, although sworn, are directly refuted by the plea colloquy transcript. Further, the Court would not have accepted Petitioner's plea of guilty if her demeanor at that colloquy had reflected any reluctance or confusion on her part. Petitioner's unsupported allegations, made for the first time here, almost 24 months after her plea hearing,[4] although sworn, are insufficient to refute her sworn statements during her plea colloquy. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) ("The district court is entitled to discredit a defendant's newly-minted story about being threatened when that

---

[4] That hearing occurred on July 23, 2015.

story is supported only by the defendant's conclusory statements.")[5]

This claim fails.

## 11. Ground #11: Involuntary Plea Agreement

Here, Petitioner asserts that Assistant United States Attorneys promised that, if she pleaded guilty in the criminal action whose sentence is the subject of this petition, they would not void the plea agreement in another then-pending criminal case, *Mollica*, 2:14-cr-329-KOB-HGD.

However, in her plea colloquy with the undersigned, Petitioner affirmed that the only promises that had been made to encourage her to enter her plea of guilty were those set out in the plea agreement. She further affirmed that "no one" had threatened her to encourage her to enter her plea of guilty.

This claim fails.

## 12. Ground #12: Due Process Violation and Fed. Rule of Crim. P. 11

In this section, Petitioner argues that neither the Court nor her attorney advised her that a period of supervised release is a consequence of her conviction. However, the fact that the punishment that could be imposed upon Petitioner's conviction included a period of supervised release was in fact set out in the plea

---

[5] The Court also notes that the Government has filed an affidavit from Petitioner's counsel refuting her assertions regarding lack of voluntariness of her plea. (*See* doc. 9 at 38, referencing doc. 9-23 (Exhibit W; Affidavit of Attorney Myers)).

agreement. Additionally, during the plea colloquy, the undersigned told Petitioner the maximum punishment that she faced upon her conviction. The undersigned told Petitioner during that colloquy that a term of supervised release could follow any term of imprisonment.

This claim fails.

### 13.    Ground #13: Violation of 6th Amendment To Enhance Sentence

Here, Petitioner argues that the enhancement of her sentence was a violation of her right to a jury trial. This claim fails for the same reasons that Ground #1 fails. Additionally, Petitioner did not object to the Presentence Report, and thus she admitted all of the facts set out in it.[6] *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes." (citations omitted)).

This claim fails.

### 14.    Ground #14: Violation of 5th Amendment for Double Jeopardy

Petitioner argues here that the application of an enhancement for obstruction of justice was double counting "when used in conjunction with the

---

[6] At the sentencing hearing, the Court specifically advised Petitioner of the consequences of not objecting to the Presentence Report and then inquired whether she had any objections. Petitioner responded that she did not have any objections.

section 3157 enhancement. Per Section 3147, 'a 3 point increase should be applied for crimes committed while on pre-trial release.' . . . The court incorrectly added both the 3-point level enhancement (taking Movant's level from 8 to 11), which increased Movant's sentencing range from 0-6 months to 8-14 months." (Doc. 13 at 9).

This claim fails for the same reasons that Grounds #1 and #13 fail.

### 15. Ground #15: Refusal To Dismiss Charges

Here, Petitioner alleges that "[p]ursuant to the Plea Agreement, the U.S. Attorney's [sic] moved to dismiss the original Obstruction of Justice charge, with prejudice and did not hold a hearing with counsel related to dismissal. Where the government dismisses a count in the indictment in exchange for a guilty plea, that charge should be dismissed without prejudice." (*Id.*)

As the Government responded, the Government did move to dismiss the original Obstruction of Justice charge without prejudice, and the Court granted that motion. (*See* doc. 9 at 41 and referenced exhibits). Further, the motion was made in open court at the sentencing hearing, Petitioner had notice that the motion would be made as it was expressly bargained for in her plea agreement, and Petitioner and her counsel were present when the motion was made. Thus, even

though her cited authority for entitlement to a hearing is not applicable,[7] she

received everything that she would have been entitled to even under that authority.

### 16. Ground #16: Violation of 6th Amendment Right to Effective Assistance of Counsel

Petitioner's sixteenth ground is that her counsel was ineffective in that he

failed to move for a change of venue, which Petitioner says he should have done

given "the U.S. Attorney's predilection for giving interviews with the local media

and [sic] well as having a current, sitting federal judge in the same court involved

in [Petitioner's] other case." (Doc. 13 at 9). However, Petitioner has failed to meet

either prong of *Strickland*. This failure is evident when comparing Petitioner's

sixteenth ground with the authority she relies on, the (non-binding in this Circuit)

case of *Cornell v. Kirkpatrick*, 665 F.3d 369, 380-81 (2d Cir. 2011).

In that case, the Second Circuit Court of Appeals found both prongs of

*Strickland* had been met, stating:

> In this case, <u>Cornell's counsel, for no strategic reason, did not raise a likely meritorious challenge to venue</u> and thus allowed for the allegations of both victims to be tried simultaneously. The Appellate Division recognized that the evidence indicated that Victim # 2 was allegedly raped in Monroe County, but because trial counsel "fail[ed]

---

[7] Petitioner cites *U.S. v. Raineri*, 42 F.3d 36 (1st Cir. 1994), and *U.S. v. Delgado-Miranda*, 951 [F.2d] 1063 (9th Cir. 1991). Such authority is not binding in this Circuit. Further, such authority relates to dismissals after Speedy Trial Act violations, and no such violation existed in Petitioner's criminal case.

to move to dismiss the count of rape that occurred in Monroe County on the ground of improper venue or to request a jury charge on venue, [Cornell] failed to preserve for ... review his ... contentions that venue was not proper." This failure occurred because trial counsel did not research the prosecutor's theory of venue prior to trial. It is implicit in the Appellate Division's factual finding—that Victim # 2's alleged rape occurred in Monroe County—that New York Criminal Procedure Law § 20.40(4)(g) did not apply to this case because that statute's applicability is limited to cases where it is "impossible to determine in what county the offense occurred." Consequently, <u>had Cornell's counsel objected to venue, there is a reasonable probability that "the result of the proceeding would have been different," and Cornell would have had the advantage of the severed trial that his trial counsel desired</u>.

*Cornell*, 665 F.3d at 383 (alterations in original) (emphases added) (citations omitted).

In this case, Petitioner offers no meritorious reason for a change in venue. Her complaint about "the U.S. Attorney's predilection for giving interviews with the local media" would, if sufficient, mean that any and all criminal trials would require a changed venue. This is preposterous and falls well short of alleging, much less showing, pre-trial publicity relating to Petitioner that would make it difficult if not impossible to convene an impartial jury as to the charges against her. Second, a change of venue would not result in a change of judge. So, the fact that Petitioner continued to engage in criminal conduct after being arraigned for a different crime before a different judge of this district would not be a basis for

21

granting a motion to change venue. Petitioner's counsel cannot have been ineffective for failing to make a meritless motion. Additionally, Petitioner has not even alleged, much less shown, how this venue prejudiced her.

This claim fails.

**17.    Ground #17: Lack of Federal Legislative Criminal Jurisdiction**

Here, Petitioner states that "[j]urisdiction is limited to Article 1 [sic], Section 8, Clause 17 of the Federal Constitution. The crime [Petitioner pleaded guilty to] is not encompassed in that article. The United States government [sic] has not proved jurisdiction over this matter." (Doc. 13 at 9). This objection is extremely underdeveloped and therefore unclear. Because Petitioner is unrepresented, the Court has considered it as stated, as interpreted by the Government in its response, and as alternatively interpreted by this Court in light of its experience. Under each interpretation, the claim fails.

The Court first turns to the claim as stated. Article I, Section 8, Clause 17 of the United States Constitution is sometimes known as the federal enclave clause.[8]

---

[8] The clause is set out in full below.

To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise

22

It grants to Congress the authority to enact "local" laws applicable within the District of Columbia just as a State legislature enacts laws applicable within each State. *See Capital Traction Co. v. Hof*, 174 U.S. 1, 5, 19 S. Ct. 580, 582, 43 L. Ed. 873 (1899) ("The congress of the United States, being empowered by the constitution to 'exercise exclusive legislation in all cases whatsoever' over the seat of the national government, has the entire control over the District of Columbia for every purpose of government,—national or local."); *Shoemaker v. United States*, 147 U.S. 282, 300, 13 S. Ct. 361, 391, 37 L. Ed. 170 (1893) (stating that "the United States possess full and unlimited jurisdiction, both of a political and municipal nature, over the District of Columbia").

Petitioner's conviction has nothing to do with the federal enclave clause. The crime that she committed, specifically, was Unlawful Use of a Communication Facility, in violation of 21 U.S.C. § 843(b). That statute is a statute of general application, that is, it is not limited to acts that occur in the District of Columbia. Further, in her plea agreement, and again in her plea colloquy, Petitioner admitted that her criminal conduct occurred in the Northern

---

like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;--And

U.S. CONST. art. I, § 8, cl. 17.

District of Alabama. This claim, construed literally, fails.

The Government has construed this claim as a challenge to the constitutionality of 21 U.S.C. § 843(b) in that it constrains activities (the mailing of narcotics) that occur in interstate commerce. If this indeed is the basis for this challenge, the Government correctly points out that

> the Supreme Court consistently has made clear, "The production, possession, and distribution of controlled substances constitute a 'class of activities' that in the aggregate substantially affect interstate commerce, and therefore, . . . Congress possesses the authority to regulate (and to criminalize) the production, possession, and distribution of controlled substances. . . ." *Taylor v. United States*, 136 S. Ct. 2074, 2080 (2016).

(Doc. 9 at 41-42) (alterations in original).

This claim, as construed by the Government, fails.

The Court has alternatively construed this claim as a claim that this Court is not authorized under the Constitution. Article III, Section 1 of the United States Constitution provides: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1. Almost immediately after the ratification of the Constitution, Congress passed the Judiciary Act of 1789.[9] In that Act,

---

[9] Act of Sept. 24, 1789, 1 Stat. 73.

Congress proceeded to create not one set of inferior courts but two. It established for each state at least one district court, and it also created three circuit courts. It established judgeships for the Supreme Court and for the district courts, but not for these circuit courts. Instead, the circuit courts, which were to hold two sessions each year at each district within the circuit, were comprised of two justices of the Supreme Court and the district judge for the district.

The district courts were entirely courts of original, or trial, jurisdiction. The Act authorized these courts to entertain admiralty cases, minor criminal cases, and some other rather limited classes of cases.

13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL

PRACTICE AND PROCEDURE § 3503 (3d ed. 2018) (footnote omitted).

Congress has enacted various laws since 1789 that have made changes to

the organization and jurisdiction of the federal courts. Relevant to Petitioner's

challenge to this Court's jurisdiction, Congress

in 1875 finally gave the lower federal courts original jurisdiction, in terms nearly identical to the constitutional grant, to cases arising under the Constitution, laws, or treaties of the United States.[FN9] Thus for the first time Congress conferred general federal question jurisdiction, although in prior years particular statutes had authorized jurisdiction in specific classes of federal question cases.

[FN9:] Act of March 3, 1875, 18 Stat. 470.

*Id*. § 3504.

In 1891, Congress radically reshaped the federal judiciary by adopting the

Evarts Act.[10]

> This statute created for each circuit a circuit court of appeals, and
> authorized the appointment of an additional circuit judge for each
> circuit. The new circuit court of appeals was to consist of three
> judges, the two circuit judges and either a justice of the Supreme
> Court or one of the district judges from within the circuit. . . .

> The Evarts Act retained both the district courts and the circuit
> courts as courts of original jurisdiction, but abolished the appellate
> jurisdiction of the circuit courts. Thus there were still two trial courts,
> with varying jurisdiction, but appeal from each was either to the new
> circuit court of appeals or to the Supreme Court.

*Id*. (footnote omitted).

> The Judicial Code of 1911[FN13] finally abolished the circuit courts.
> A source of complaint and controversy from their establishment in
> 1789, they had been quite unnecessary since the adoption of the
> Evarts Act in 1891. In 1911 their original jurisdiction was transferred
> to the district courts.

> [FN13:] Act of March 3, 1911, 36 Stat. 1087.

*Id*.

As a result of these Acts of Congress pursuant to Article III, the district

courts of the United States of America have had plenary jurisdiction over federal

criminal cases since 1911. This Court is one of those United States district courts,

and the undersigned is a judge of this Court.

This claim as alternatively construed fails.

---

[10]  Act of March 3, 1891, 26 Stat. 826.

## V.     Conclusion

All seventeen of Petitioner's claims fail. Her ineffective assistance claims

fail based on her failure to meet both prongs of *Strickland*. Her substantive claims

fail because they are procedurally barred and alternatively because they lack merit.

A separate final judgment order will be entered.

**DONE** this the 12th day of September, 2018.

**VIRGINIA EMERSON HOPKINS**
Senior United States District Judge